## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARREN LUTZ | : | |
| Plaintiff, | : | |
| | | |
| v. | : | |
| | | |
| SANTANDER CONSUMER USA, INC.; | : | Civil Action No.: |
| BILL'S MOTOR TRANSPORT AUTO RECOVERY, | : | |
| Defendants. | : | |

## COMPLAINT

**A.**     **Jurisdiction and Venue**

1.     Jurisdiction arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1337(a), together with the pendent jurisdiction of the court.  Supplemental jurisdiction over Plaintiff's state law claims is granted by 28 U.S.C. § 1367(a).  Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

2.     Venue lies in this judicial district in that the events which gave rise to this claim occurred here and the property which is the subject of the action is situated within this district.

**B.**     **Parties**

3.     Plaintiff Warren Lutz is a natural person who resides at 102 Carey Avenue, Wilkes Barre, PA 18702.

4.     Defendant, Santander Consumer USA, Inc. (Santander) is a corporation licensed to do business in the Commonwealth of Pennsylvania, that regularly does business in Philadelphia County, and that has headquarters located and at P.O. Box 961245, Forth Worth, TX  76161-1245, and all times relevant, acting alone or in concert with others, formulated, directed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

5.      Defendant, Bill's Motor Transport Auto Recovery ("Tow Company") has a principal place of business located at 414 Wildflower Dr., Wilkes Barre, PA, and all times relevant, was engaged in the collection and repossession activities described herein through its agent, John Doe, each of whom are a debt collector as defined by 15 U.S.C. §1692a(6) insofar as:

(a) Tow Company uses a tow vehicle as an instrumentality of interstate commerce in its business the principal purpose of which is the enforcement of security interest.

(b) Tow Company breached the peace to effectuate a repossession and, in so doing, lost any present right to the collateral securing plaintiff's debt.

## C.      Factual Allegations

6.      On or about May 31, 2006, Plaintiff traveled to Kingston Dodge's dealership to purchase a used motor vehicle.

7.      Kingston Dodge Inc. d/b/a Pompey Dodge ("Dealer"), now defunct, was a corporation licensed to do business in the Commonwealth of Pennsylvania, regularly conducting business as a franchised Chrysler dealership in the Commonwealth of Pennsylvania and having a principal place of business located at 303 Wyoming Ave., Kingston, PA  18704. Dealer, at all times relevant, acting alone or in concert with others, formulated, directed, concealed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

8.      While at the dealership, plaintiff viewed a pre-owned 2003 Chrysler Voyager van bearing Vehicle Identification 1C4GJ258738267596 (hereinafter "the Vehicle").

9.      In response to plaintiff's questions about the subject motor vehicle's history, the defendants' agents, including but not limited to the John Doe salesperson whose legal name cannot be discerned on the attached sales documents, represented to plaintiff that the Vehicle sustained no prior accidents.

10.     Prior to the formation of any agreements or execution of any contracts, Defendant, by and through its agents, including those identified on the sales documents for the Vehicle, concealed from the plaintiff that the vehicle had been in a prior serious motor vehicle accident in North Carolina in December, 2003.

11.     In reliance upon Defendant's representations, Plaintiff agreed to purchase the Vehicle by completing and signing a Retail Installment Sales Contract ("RISC") to finance purchase of the Vehicle (see "RISC" attached as Ex. "A").

12.     The RISC was subsequently purchased from Dealer by Santander.

13.     Further inquiry thereafter revealed the Vehicle had a significant prior damage history from a prior accident.

14.     Upon information and belief, the prior accident caused, among other defects, frame damage to the vehicle which severely reduced or eliminated the market resale value of the Vehicle as a used vehicle as well as causing it to be a danger to its occupants while being operated.

15.     Based upon its agents' and/or employees' specialized training, its agents' and/or employees' experience in the trade, its inspection of the vehicle, the vehicle's service history, and/or its knowledge of the prior accident by CarFax concealed from plaintiff, Defendant knew or should have known of the vehicle's true history and condition, including

the prior collisions and multiple instances of damage.

16.     Plaintiff has been and will continue to be financially damaged by the diminution in or elimination of the Vehicle's value at time of its sale by Defendant due to its intentional, reckless, wanton, and negligent failure to inform plaintiff of the vehicle's prior use, prior repair history, damage history, and accident history.

17.     Dealer's actions as outlined above and below were part of defendant's regular and customary method of doing business.

18.     Dealer held managerial and/or supervisory control over all of their agents and all of the policies and procedures involved and/or at issue in this matter.

19.     Dealer directly and personally participated in the development, adoption and/or execution of the policies and practices at issue herein.

20.     Plaintiff would not have purchased the vehicle had he known it was in a prior accident.

**Repossession of the Vehicle**

21.     On or about March, 2011, only three (3) months shy of paying offer the RISC for the vehicle in June, 2011, plaintiff fell into arrears on his Vehicle's financing payments.

22.     On or about August 8, 2011, Plaintiff called and spoke to Mike at Santander who agreed to accept ½ of the total amount due at the time of the contact with the balance due within thirty (30) days thereafter (the Repayment Agreement).

23.     On or about August 8, 2011, in reliance upon the repayment agreement, Plaintiff paid the ½ due in the amount of roughly $1,200.00.

24.     On or about August 27, 2011, a Saturday morning, Tow Company began hooking

up the Vehicle parked in the driveway on the side of plaintiff's home.

25.     During the aforesaid act by Tow Company, plaintiff's wife advised John Doe that he could not take the Vehicle because plaintiff had an existing agreement to pay arrears due to Santander as described herein.

26.     When John Doe failed to stop the repossession, plaintiff's wife stated that he would call the police whereupon John Doe replied, "Go ahead".

27.     Plaintiff showed the Western Union receipt to Santander to show there was an existing agreement to pay arrears due to Santander as described herein.

28.     Plaintiff's neighbor witnessed the repossession as it occurring.

29.     Upon information and belief, Santander directed Tow Company to repossess the Vehicle.

30.     At all times relevant hereto, defendant Santander acted by and through its agents, servants, and employees who acted within the scope of their authority and within the course of their employment in accordance with the knowledge and training of Santander.

31.     Plaintiff has suffered severe emotional distress, anxiety, and embarrassment as a result of defendants' conduct which continues in the form of harassing and abusive telephone calls to plaintiff.

**D.      Cause of Action**

**COUNT I – Violations of the FDCPA**
*Plaintiff v. Tow Company*

32.     Plaintiff incorporates all prior facts and allegations of the Complaint herein.

33.     At all times relevant hereto said Defendant was attempting to collect an alleged

debt to it which was incurred for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

    34.    Defendant, by its conduct as described above, violated the FDCPA as follows:

    a)  §1692d, Engaged in conduct the natural consequence of which is to harass, oppress, or abuse a person;

    b)  §1692e(10) and e(2) used false representation or deceptive means to collect a debt and misled plaintiff as Inspector Moore being a law enforcement officer.

## <u>COUNT II - INVASION OF PRIVACY BY INTRUSION UPON SECLUSION</u>

    35.    Plaintiff incorporates all prior facts and allegations of the Complaint herein.

    36.    Defendants intentionally interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff by involving plaintiff's neighbor in notice of and collection of a debt who was a stranger to the debt.

    37.    Defendants intentionally caused harm to Plaintiff's emotional well being by engaging in highly offensive conduct in the course of collecting a debt, as described herein.

    38.    Plaintiff had a reasonable expectation of privacy in Plaintiff's respective solitude, seclusion, and or private concerns or affairs.

    39.    The intrusion by Defendants occurred in a way that would be highly offensive to a reasonable person in that position.

    40.    As a result of such invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from each and every Defendant.

## COUNT III – FRAUD
*Plaintiff v. Santander*

41.     Plaintiff incorporates all prior facts and allegations of the Complaint herein.

42.     By its purchase of the RISC, Santander is liable as holder for the acts of Dealer insofar as the RISC contained or should lowing language mandated by the FTC:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR.

43.     Before the purchase, Dealer's agents, including but not limited to those identified on the attached records, intentionally, recklessly and/or negligently, expressly or impliedly represented to the plaintiff that the Vehicle had not been involved in any prior accidents and that it was free of defects or conditions hampering its use, value, or safety.

44.     At all times relevant, and in response to plaintiff's questions about the Vehicle, the defendants' agents, including but not limited to those identified on the attached records, concealed from the plaintiff that the vehicle was in multiple prior accidents, one or more severe enough to cause frame damage to the vehicle.

45.     Defendants failed to disclose frame damage to the vehicle as required by the Pa. Code § 301.2. sets forth affirmative duties for sellers like Dealer to comply with in its sale of a vehicle to a consumer:

## § 301.2. Advertising and sales presentation requirements.

With respect to an advertisement or sales presentation offering or making available for sale a new or used motor vehicle or maintenance service or repair on a new or used motor vehicle, the following will be considered unfair methods of competition and unfair or deceptive acts or practices:

7

…

(5)  The representation in an advertisement or sales presentation that a motor vehicle or motor vehicle goods or services are of a particular style, model, standard, quality or grade if they are of another or if the representation conflicts with a written notice or disclosure required under this chapter. For the purposes of this chapter, a motor vehicle which is offered for sale is represented to be roadworthy, and the advertiser or seller shall disclose prior to sale the following conditions if the advertiser or seller knows or should know that the conditions exist in the motor vehicle:

(i)  Frame bent, cracked or twisted.

…

(6)  The making of a representation or statement of a fact in an advertisement or sales presentation if the advertiser or salesperson knows or should know that the representation or statement is false and misleading or if the advertiser or salesperson does not have sufficient information upon which a reasonable belief in the truth of the representation could be based.

46.    The defendant's representations and/omissions outlined in previous paragraph were false, were known or should have been known to defendants to be false when made, were material in nature, and were made with the intent to deceive, defraud and/or induce the plaintiff, and in fact, induced him to purchase the automobile at the price listed in the purchase agreement.

47.    Seller's duty to disclose prior frame damage was statutory and not a matter of contract.

48.    Seller failed to affirmatively disclose the vehicle's past accident history of frame damage.

49.    The defendant's representations and/omissions outlined in previous paragraph were false, were known or should have been known to defendants to be false when made, were material in nature, and were made with the intent to deceive, defraud and/or induce the plaintiff, and in fact, induced him to purchase the automobile at the price listed in the purchase agreement.

50.     Defendant knew or should have known that the Vehicle was in a defective condition based on:

        a)      their inspection of and the condition of the vehicle;

        b)      its prior use history

        c)      the vehicle history report;

        d)      its prior repair history;

        e)      its prior ownership history and their reputation in the industry;

        f)      their experience in the trade;

        g)      their familiarity with reports in popular and industry related media;

        h)      the manufacturer's warranty and repair history and/or database.

51.     Defendant knew that the plaintiff had no special knowledge in the purchase and condition of automobiles and would rely on their representations.

52.     The plaintiff relied on Defendants' misrepresentations and was induced to purchase the aforementioned automobile and service contract at the inflated amount listed in the purchase agreement.

53.     As a result of the aforementioned conduct, the plaintiff suffered the damages outlined above and below in addition to extreme mental anguish, frustration, humiliation, embarrassment and stress.

54.     The defendants' actions as hereinbefore described, including but not limited to concealing the vehicle's history and defects which reduced the vehicle's market resale value as a used vehicle, were reckless, outrageous, willful, and wanton, thereby justifying the imposition of punitive damages.

## COUNT IV
## VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES
### *Plaintiff v. Santander*

55.     Plaintiff incorporates all prior facts and allegations of the Complaint herein.

56.     The actions and omissions of defendant as hereinbefore and hereinafter described, including but not limited to concealing the vehicle's history and defects which reduced or eliminated the vehicle's market resale value as a used vehicle, constitute violations of the Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. sec. 201-1 *et. seq.* including but not limited to the violation of 73 P.S. § 201-2(4):

> (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

> (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

> (ix) Advertising goods or services with intent not to sell them as advertised;

> (xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

**Pennsylvania Motor Vehicle Sales Finance Act**

57.     Defendant Dealer is licensed pursuant to 69 P.S. § 604.

58.     Pursuant to 69 P.S. § 610 Defendant Dealer's license may be revoked if it has violated any provision of the MVSFA.

59.     Pursuant to 69 P.S. §§ 610 and 612 Defendant Dealer must maintain satisfactory records to determine that the business is being operated in accordance with the MVSFA and may not falsify any records.

60.     Defendants violated 69 P.S. §§ 610 and 613-615 by defrauding the Plaintiffs.

61.     Defendants violated 69 P.S. §§ 610 and 613-615 by failing willfully to perform a written agreement with the Plaintiffs.

62.     Defendants violated 69 P.S. § 610 by engaging in unfair, deceptive, fraudulent or illegal practices or conduct in connection with any business regulated under the MVSFA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendants for the following:

A.  Statutory damages pursuant to 15 U.S.C. § 1692k;

B.  Actual damages;

C.  Treble damages;

D.  Punitive damages;

E.  Reasonable attorney fees and costs.

**TRIAL BY JURY**

63.     Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7. Fed. R. Civ. Pro. 38.

Dated: <u>December 2, 2011</u>                    <u>RC935</u>
                                                 By:  Robert P. Cocco, Esquire
                                                 Pa. Id. No.
                                                 1500 Walnut Street, Suite 900
                                                 Philadelphia, PA 19102
                                                 215-351-0200


                                                 BENSLEY LAW OFFICES, LLC
                                                 William Bensley, Esquire
                                                 Identification No.:  79953
                                                 1500 Walnut Street - Suite 900
                                                 Philadelphia, PA  19102

                                                 Attorneys for Plaintiff